### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF OKLAHOMA

CATHY DALE HUMMINGBIRD,           )
                                  )
            Plaintiff,            )
                                  )
                                  )  Case No. CIV-20-446-RAW-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )

### REPORT AND RECOMMENDATION

Plaintiff Cathy Dale Hummingbird (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 56 years old at the time of the ALJ's decision. She has a ninth-grade education and worked in the past as a fast food service assistant manager. Claimant alleges an inability to work beginning on June 22, 2018, due to limitations resulting from bipolar disorder, schizophrenia, paranoia, hearing voices, psychosis, depression, anxiety, and diabetes.

### Procedural History

On September 10, 2018, Claimant filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's

application was denied initially and upon reconsideration. On January 17, 2020, ALJ Lantz McClain conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. On February 19, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on October 5, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to properly evaluate the medical opinions of consultative examining psychologist Joseph James, Psy.D., LPC.

## Consideration of Medical Opinions

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus, chronic obstructive pulmonary disease (COPD), borderline obesity, and bipolar disorder. (Tr. 12). He determined Claimant could perform medium work with additional limitations. Claimant could occasionally lift and/or

carry fifty pounds and frequently twenty-five pounds, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Claimant was to "avoid concentrated exposure to such things as dust or fumes (work in an environment as clean as an ordinary Wal-Mart)." She could perform simple, repetitive tasks with only occasional interaction with supervisors or coworkers. She could not work with the public. (Tr. 14).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of janitor, hand packer, and production worker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 24). As a result, the ALJ concluded Claimant was not under a disability from June 22, 2018, through the date of the decision. (Tr. 25).

Claimant asserts that the ALJ failed to properly evaluate the medical opinion of consultative examining psychologist, Dr. James. She contends that although the ALJ summarized Dr. James' opinions in the evidentiary summary of the decision, his discussion of Dr. James' opinions using the required factors was lacking.

Defendant responds that the ALJ properly considered Dr. James' opinions when determining they were "somewhat persuasive." Defendant further points to other evidence in the record indicating Claimant's intellectual functioning was average and to

inconsistent treatment notes dating after Dr. James' examination of Claimant. Defendant maintains that even if the ALJ did not sufficiently articulate his findings as to Dr. James' opinions in the decision, his reasons need only be clear enough to enable judicial review, and that in this case, the ALJ's reasoning can be discerned by the Court and his decision is fully supported by the evidence.

Claimant underwent a mental status examination with Dr. James on November 13, 2018. Claimant reported symptoms of depression, bipolar disorder, panic attacks, social anxiety disorder, and psychosis. She cried all the time and experienced paranoia and difficulty concentrating. She had recently been hospitalized for suicidal ideations. She could not remember what she did the prior weekend or the day before her examination. She reported substance use in the past, but she indicated she had been clean for five years.

Upon examination, Dr. James found Claimant's affect was calm and varied appropriate to the interview. Although she reported her mood as "nervous," her thought processes were logical, sequential, and goal driven. She reported hearing voices two to three days per week, and Dr. James noted Claimant's memory appeared "poor[] and defective in the immediate or short-term." Her attention and concentration were sufficient for gathering details during the examination, she was agreeable, but she "display[ed] below average

6

intelligence." Based on his observation of Claimant's behavior and mental status, Dr. James concluded Claimant "might not be capable of engaging in common work/learning related mental tasks [(1)] as her memory, attention and concentration was not adequate for gathering pertinent details and her thought process did not appear to be logical[,] sequential and goal driven[,] [2] [t]here were indications of psychosis or hallucinations and . . . suicidal or homicidal ideations[,] [and] [3] Claimant was disagreeable and uncooperative and she displayed what appeared to be a low IQ[.]"

Claimant's result on the MMSE "suggest[ed] [her] reported difficulties are severe enough to inhibit [her] ability to demonstrate basic cognitive functions such as memory and delayed recall, conceptual thinking, and calculations as measured by this exam." Dr. James indicated that Claimant's performance on the test suggested that her "IQ may be significantly below average." He assessed Claimant with stimulant use disorder (amphetamine, in full recovery) and bipolar I disorder (current or most recent episode unspecified). He indicated that other diagnoses, including borderline intellectual functioning and intellectual disability, needed to be ruled out. Dr. James stated additional testing, including the MMPI-2 and the WAIS/WISC were needed.

When noting how Claimant's mental/cognitive impairments would limit her capacity to perform work-related mental activities, Dr. James determined "[C]laimant's capacity to execute tasks of daily

living and adaptive functioning (i.e. self-care, grooming, shopping, cooking, house cleaning, and money management) is estimated to be severely impaired for occupational and educational purposes as the [C]laimant appears capable of performing some ADL's but requires close supervision and high levels of support." Regarding her cognitive ability, Dr. James concluded "[C]laimant's ability to understand work/school-related activities might be severely impaired for occupational and educational purposes as the [C]laimant displays evidence of significant cognitive deficit. Additional testing, including administration of an IQ test is needed." As for her memory, he determined her "ability to remember work/school related information is estimated to be intermittently impaired as the [C]laimant's memory appears organically intact, but anxiety and/or depression might be interfering." Regarding her concentration and task persistence, Dr. James found "[C]laimant's ability to concentrate and persist in work/school related tasks is estimated to be intermittently impaired as the [C]laimant displayed difficulty adequately attending to the questions being asked, appeared overly distractable, and was unable to ignore interfering environmental stimuli." He further concluded "[C]laimant's ability to socially interact and adapt in work/school related environment is estimated to be intermittently impaired as the [C]laimant appears excessively hypervigilant and paranoid and behaves in an odd manner."

8

Dr. James found Claimant could not manage her own funds without assistance. He noted that although Claimant's overall level of functioning would improve with individual psychotherapy, support group engagement, and medication, a full recovery was in question. Dr. James believed his examination was "valid and typical assessment of this [C]laimant's cognitive and mental functioning." He deemed Claimant's cooperation as "adequate" and noted her "performance did not seem to include intentional or misleading over/underreporting." (Tr. 352-59).

Because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or

prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking

10

only the parts that are favorable to a finding of nondisability").
If he rejects an opinion completely, the ALJ must give "specific,
legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d
1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ summarized Dr. James' opinion in the decision. (Tr.
17-18). After summarizing Dr. James' report, the ALJ found his
opinion "somewhat persuasive" with the following explanation:

> The consultative examiner assessment is only somewhat
> persuasive as to the mental status exam (Exhibit 4F), as
> there are some discrepancies regarding the need for
> additional examinations to rule out borderline
> intellectual functioning and intellectual disability;
> however, the claimant's past occupation was performed at
> the skilled level and other documents in the file are
> not consistent with this assessment.

(Tr. 23).

Although the ALJ noted there were discrepancies between Dr.
James' recommendation that Claimant undergo additional
examinations regarding her intellectual functioning and the skill
level of her past relevant work and that other documents in the
file were inconsistent with his assessment, the ALJ's analysis
made no specific references to the discrepancies or the
inconsistent evidence. The ALJ also did not reference any of Dr.
James' mental functional findings in his analysis. The ALJ does
not have to give any "specific evidentiary weight" to Dr. James'
opinion, but he cannot pick and choose certain opinions that
support his analysis and then fail to explain why he is rejecting

others that do not. *See Hardman*, 362 F.3d at 681.[2] The ALJ should properly address Dr. James' opinion on remand and determine whether it affects Claimant's ability to perform work.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of December, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

[2]    The Court cannot make the determination for the ALJ. *See Haga*, 482 F.3d at 1207 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").